UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES QUILL COCKERHAM,

    Petitioner,

v.

TERRY WILKINS,

    Respondent.

Case No. 24-cv-11535

Honorable Robert J. White

---

**ORDER DENYING HABEAS PETITION, DENYING A CERITIFCATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

---

Petitioner James Quill Cockerham filed a petition for a writ of habeas corpus under 28 US.C. § 2254. (ECF No. 1).  Cockerham proceeds pro se. A jury convicted Cockerham of (1) first-degree murder and felony murder, Mich. Comp. Laws § 750.316(1); (2) torture, § 750.85; (3) unlawful imprisonment, § 750.349b; (4) kidnapping, § 750.349b; (5) first degree criminal sexual conduct (CSC-I), § 750.520b(1)(f); and (6) second-degree criminal sexual conduct (CSC-II), § 750.520c(1)(f). (*Id.* at PageID.1–2).  Because Cockerham was a fourth habitual offender under § 769.12, the Court sentenced him to life in prison without the possibility of parole on the murder conviction, concurrent terms of 75-to-150 years on the torture, unlawful imprisonment, kidnapping, and CSC-II convictions, and a

consecutive term of 30-to-60 years in prison on the CSC-I conviction. (ECF No. 10-28, PageID.1670–72). In his habeas petition, Cockerham challenged the sufficiency of the evidence used to convict him for murder and asserted that the murder convictions went against the great weight of the evidence. (ECF No. 1, PageID.34). Cockerham also argued that the prosecutor's and court stenographer's misconduct robbed him of his due process rights to a fair trial, that Cockerham's trial and appellate counsel were both ineffective, and that his sentence for first degree and felony murder violated the Constitution's double jeopardy clause. (*Id.* at PageID.38–62).

For the reasons stated below, the Court will deny Cockerham's habeas petition. In doing so, the Court will also deny Cockerham a certificate of appealability and leave to proceed in forma pauperis on appeal.

## I. Background

A jury convicted Cockerham based on facts that showed Cockerham kidnapped, sexually exploited, and murdered a woman at the Parkview Towers apartments in Detroit, Michigan. *People v. Cockerham*, Nos. 356497, 356498, 2023 WL 4141080 (Mich. Ct. App. June 22, 2023). The Michigan Court of Appeals summarized the facts in more detail as follows[1]:

---

[1] The Court presumes the state court's factual determination is correct. *See* 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009) ("the relevant facts

Defendant's convictions arise from the kidnapping, sexual assault, and homicide of the decedent at the Parkview Towers senior citizens' apartment building in Detroit, Michigan on the night of May 14, 2019. The decedent and her boyfriend were staying with his father in his apartment. The father buzzed her into the building, but she never arrived at the apartment. The decedent's body was discovered in a trash compactor bin the following morning. The prosecutor constructed a chain of events from security camera videos, defendant's cell phone records, and his GPS tether records. The prosecutor also introduced testimony from witnesses who saw blood in a laundry room and trash chute room.

The evidence at trial showed that defendant and his sister were leaving the Parkview Towers after visiting their mother when defendant saw the decedent in the parking lot. At that point, he told his sister that he was going to stay at the apartments longer. Defendant then waited in the building lobby watching for the decedent to appear. When she did, defendant followed her onto the elevator and overpowered her. Defendant sexually assaulted and battered the decedent in the eighth-floor laundry room. He took her back to the lobby briefly to retrieve her purse and cell phone and then took her to the second-floor trash collection room and pushed her into the trash chute while she was still alive and conscious. She was crushed to death when the attached trash compactor cycled.

The police identified defendant as a suspect from the surveillance videos that showed him waiting for the decedent and following her into the elevator. Defendant's sister and a Parkview Towers security worker saw his picture on the news and contacted the police to identify him. Defendant's presence at Parkview Towers was corroborated by his cell phone records and his GPS tether.

Defendant was found guilty by the jury of first-degree premeditated murder, MCL 750.316(1)(a); first-degree felony murder, MCL 750.316(1)(b); torture, MCL 750.85; kidnapping, MCL 750.349; unlawful imprisonment, MCL 750.349b; CSC-I, MCL 750.520b(1)(f)

---

relied upon by the Michigan Court of Appeals . . . are presumed correct on habeas review").

(sexual penetration accomplished through force or coercion and causing personal injury); and CSC-II, MCL 750.520c(1)(f) (sexual contact accomplished through force or coercion and causing personal injury). The trial court issued a judgment of sentence for each case. The judgment for LC No. 19-004442-01-FC stated that defendant was convicted of first-degree premeditated murder and sentenced to life in prison without parole. The judgment for LC No. 20-000327-01-FC stated that defendant was convicted of first-degree felony murder and sentenced to life in prison without parole. The trial court subsequently issued amended judgments of sentence clarifying that defendant was convicted of one count of first-degree murder on two theories, premeditation and felony murder. The amended judgment for LC No. 20-000327-01-FC listed "no term" for the felony-murder sentence.

*Id.* at *1. The Court will also adopt the detailed summary of the trial testimony set forth in the prosecutor's brief on appeal. *See* ECF No. 10-35, PageID.2243–58.

After his sentencing, Cockerham appealed his convictions as of right to the Michigan Court of Appeals. *Cockerham*, 2023 WL 4141080, at *1. He raised the same claims he presented in his habeas petition. *Id.* at *2–8. The Michigan Court of Appeals denied Cockerham's requested relief and affirmed his convictions and sentences. *Id.* Cockerham then filed an application for leave to appeal with the Michigan Supreme Court, which the court denied in a standard order. *People v. Cockerham*, 513 Mich. 998, 1 N.W.3d 262 (2024).

Cockerham then filed the habeas petition currently pending before this Court. (ECF No. 1). Respondent Terry Wilkins answered the petition and asked the Court

to deny it because Cockerham's claims are either unexhausted, procedurally defaulted, or meritless. (ECF No. 9, PageID.316–417).

## II.     Legal Standard

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), codified at 28 U.S.C. § 2241 *et seq.*, sets forth the standard of review that federal courts must use when considering habeas petitions brought by prisoners challenging their state convictions.  Under AEDPA, a court shall not grant a habeas petition for claims already adjudicated on the merits by a state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d) (1996).  "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).  "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that

principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694.

For a federal court to find a state court's application of Supreme Court precedent unreasonable, "the state court's decision must have been more than incorrect or erroneous." *Wiggins*, 539 U.S. at 520–21. That is, the application must be "objectively unreasonable." *Id.* The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam). Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White v. Woodall*, 572 U.S. 415, 419–20 (2014).

Section 2254(d)(1) limits a federal habeas court's review to whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a

6

specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125–26 (2008) (per curiam)); *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003).  The requirements of clearly established law are to be determined solely by Supreme Court precedent.  The decisions of lower federal courts, however, may be useful in assessing the reasonableness of the state court's resolution of an issue. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1).  A habeas petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360–361 (6th Cir. 1998).  Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## III.    Analysis

Cockerham asserted the following claims in his habeas petition.  First, the prosecutor failed to present sufficient evidence to sustain the first-degree murder conviction, or in the alternative, the first-degree and felony murder convictions went against the great weight of the evidence. (ECF No. 1, PageID.34–37).  Second, the prosecutor's repeated appeals to the jury's sympathy violated Cockerham's due process rights to a fair trial, and Cockerham's trial counsel was ineffective in failing

to object to such prosecutorial misconduct. (*Id.* at PageID.38–41).   Third, the prosecutor deliberately deceived the trial court and jury by knowingly presenting false evidence material to Cockerham's guilt or innocence, thereby depriving Cockerham of his right to a fair trial. (*Id.* at PageID.42–46).   Fourth, the prosecutor and court stenographer deliberately fabricated the testimony in the trial transcripts, inhibiting meaningful appellate review. (*Id.* at PageID.47–49).   Fifth, Cockerham's trial counsel was ineffective because counsel failed to call witnesses to rebut the prosecution's witnesses, failed to present an alibi defense, failed to impeach witnesses, and allowed the prosecution to introduce false evidence. (*Id.* at PageID.50–58).   Sixth, the trial court erred when it neglected to indicate at sentencing that Cockerham was only to be convicted of first-degree murder charge, and not the felony murder, in violation of the double jeopardy clause. (*Id.* at PageID.59–62).   Seventh, Cockerham alleged his appellate counsel was ineffective for failing to raise his double jeopardy claim. (*Id.*).   For the reasons explained below, the Court will deny habeas relief for all claims.

### A.   Sufficiency of the Evidence

To start, Cockerham asserted that the prosecution failed to present sufficient evidence to support his first-degree premeditated murder conviction. (*Id.* at PageID.34).   Namely, the prosecutor offered insufficient evidence of premeditation

and deliberation. (*Id.* at PageID.35–36).  Wilkins responded that Cockerham's claim is meritless. (ECF No. 9, PageID.327–34).

In reviewing a sufficiency of the evidence claim, the court must decide "whether, after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002).  The court will "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury" in making its decision. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  And the court "must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *Id.* (citing 28 U.S.C. § 2254(d)(2)).  The petitioner faces "two layers of deference" to overcome, then, in the form of the jury verdict and the state appellate decision. *Brown*, 567 F.3d at 204–05.

Under Michigan law, first-degree premediated murder requires proof that the defendant intentionally killed the victim and that the killing was premeditated and deliberate. *People v Bennett*, 290 Mich. App. 465, 472 (2010); Mich. Comp. Laws § 750.316.  To establish premeditation and deliberation, the prosecutor may rely on: "(1) the prior relationship of the parties; (2) the defendant's actions before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." *People v. Schollaert*, 194 Mich. App. 158, 170 (1992).  Although

Michigan law does not require that a certain amount of time pass before the premeditation and the murder, the time between the initial thought and ultimate action should be long enough for a reasonable person to take a "second look" at the situation. *People v Oros*, 502 Mich. 229, 242–43 (2018). And as relevant here, "[p]remeditation and deliberation may be inferred from all the facts and circumstances, but the inferences must have support in the record and cannot be arrived at by mere speculation." *People v. Bass*, 317 Mich. App. 241, 266 (2016).

The Michigan Court of Appeals considered Cockerham's sufficiency of the evidence claim on direct appeal. 2023 WL 4141080, at *2–3. The Michigan Court of Appeals ultimately denied Cockerham his requested relief on the grounds that the evidence presented at trial established premeditation. *Id.* at *3. Specifically,

> The prosecutor introduced evidence that defendant waited in the lobby, watched for the decedent to return, and then waited for her outside the elevator. Defendant's posture and observable behavior showed that he pretended to talk on his cell phone until he had the opportunity to encounter the decedent in the elevator. These actions reflected a plan to isolate himself with the decedent and attack her. Defendant's conduct in taking the decedent back to the first floor to retrieve her belongings and then subsequently forcing her back into the elevator with him indicated that he had already decided at that moment to take her back to an upper floor to kill her. The unusual manner in killing—pushing the decedent down a trash chute—also demonstrated that defendant thought about how he would dispose of the decedent after sexually assaulting her. Viewing the evidence in the light most favorable to the prosecution, this evidence was sufficient to support a finding of premeditation.

*Id.*

The state court's decision neither contravenes Supreme Court precedent nor unreasonably applies federal law or the facts.  The Court agrees that the prosecution presented sufficient evidence of premeditation and deliberation to support Cockerham's first-degree murder conviction.  The evidence included testimony and video footage demonstrating the following sequence of events. Cockerham saw the victim leave the apartment building around 9:30 p.m. (ECF No. 11-3, PageID.3325–26). Cockerham left but then returned to the building at 10:09 p.m. (*Id.* at PageID.3328–29; ECF No. 11-2, PageID.3258).  Cockerham went upstairs briefly upon his return, but starting at 10:15 p.m., sat in the lobby for about fifteen minutes in a chair facing the parking lot. (ECF No. 11-3, PageID.3329–30).  When the victim pulled into the lot at 10:29 p.m., Cockerham stood up and waited by the elevators for several minutes until the victim came inside. (*Id.* at PageID.3333–37). Cockerham pretended to be on his phone while the elevator opened and closed twice on him; once the victim entered elevator one, he followed her in. (*Id.* at PageID.3338–39).  Eleven minutes later, at 10:44 p.m., the victim and Cockerham exited the elevator together. (*Id.* at PageID.3339, 3346–47).  Cockerham had his arm around the victim, and she appeared wobbly. (*Id.* at PageID.3347–48).  As the two waited for a different elevator, Cockerham peered around. (*Id.* at PageID.3349). Cockerham took the victim into that elevator at 10:45 p.m., and footage showed him exiting that elevator alone at 10:53 p.m. (ECF No. 11-3, PageID.3351, 3353).

Such evidence, viewed in a light favorable to the prosecution, was sufficient to establish that Cockerham intended to sexually assault and kill the victim, that he had time to take a "second look" and consider his actions before, during, and after the assault, and that he acted with the requisite intent to support his first-degree murder conviction under a premeditation theory. That is, Cockerham sat in the lobby for fifteen minutes facing the parking lot; as soon as the victim arrived back at the apartment complex, he jumped up and waited by the elevators. A rational trier of fact could infer that because the elevators opened and closed twice on Cockerham, he had no intention of simply going to another floor. Instead, he waited until the victim was at the elevator bank to follow her inside. Considering the events that unfolded afterwards, there is more than enough evidence to suggest that Cockerham acted deliberately and with premeditation to sexually assault and murder the victim. Ultimately, the jury's verdict, and the Michigan Court of Appeals' decision affirming that verdict, were reasonable. Habeas relief is not warranted on this claim.

## B.    Great Weight of the Evidence

Relatedly, Cockerham asserted that his first-degree murder conviction (under both theories) went against the great weight of the evidence. (ECF No. 1, PageID.36–37). Wilkins responded that this claim is not cognizable on habeas review and is meritless. (ECF No. 9, PageID.334–35). The Court agrees that Cockerham is not entitled to habeas relief on this theory.

It is well-established that federal courts cannot use habeas review as a means to correct errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). The federal constitution requires only that the evidence be sufficient to sustain the conviction under the standard established in *Jackson v. Virginia*, 443 U.S. 307, 321 (1979). When the evidence is sufficient, a claim that the verdict went against the weight of the evidence presents a state law issue that is not cognizable on habeas review. *See Crenshaw v. Renico*, 261 F. Supp. 2d 826, 833 (E.D. Mich. 2003). Since the evidence was sufficient to convict Cockerham, Cockerham's habeas petition fails.

### C.      Prosecutor's Conduct

Next, Cockerham asserted the prosecutor engaged in misconduct by appealing to the jury's sympathy for the victim, by denigrating him, by knowingly presenting false evidence, and by fabricating the trial transcripts (in cahoots with the court reporter). (ECF No. 1, PageID.38–49). Wilkins argued these claims are procedurally defaulted and meritless. (ECF No. 9, PageID.336–48, 353–69, 372–80).

To prevail on a prosecutorial misconduct claim, a habeas petition must show that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *see also Darden v. Wainwright*, 477 U.S. 168, 181 (1986)

(citing *Donnelly*); *Parker v. Matthews*, 567 U.S. 37, 45 (2012) (confirming that *Donnelly/Darden* is the proper standard).  A federal court "cannot set aside a state court's conclusion on a federal prosecutorial-misconduct claim unless a petitioner cites . . . Supreme Court precedent that shows the state court's determination in a particular factual context was unreasonable." *Stewart v. Trierweiler*, 867 F.3d 633, 638-639 (6th Cir. 2017).

### 1.    Closing Arguments

According to Cockerham, the prosecutor committed misconduct by eliciting sympathy for the victim and referring to Cockerham as a predator during closing arguments. (ECF No. 1, PageID.38–41).  The Michigan Court of Appeals reviewed this claim on appeal and denied relief and explained its decision as follows. *Cockerham*, 2023 WL 4141080, at *4–5.

First, the challenged statements made by the prosecutor aligned with the elements of the torture charge against Cockerham. *Id.* at *4; *see* Mich. Comp. Laws § 750.85 (defining torture charge).  That is, the prosecutor needed to demonstrate to the jury that Cockerham acted with "the intent to cause cruel or extreme physical or mental pain and suffering" and that he did inflict "great bodily injury or severe mental pain or suffering upon another person within his [] custody or physical control." § 750.85(1); *Cockerham*, 2023 WL 4141080, at *4.  Section 750.85(2)(a) defines "cruel" as "brutal, inhuman, sadistic, or that which torments."  Clearly, the

14

statute contemplates proof of conduct that is "extraordinary and shocking, not merely harmful." *Cockerham*, 2023 WL 4141080, at *4. Based on the statutory definition, then, the prosecutor's statements "were not gratuitous hyperbole," but directly related to the proofs required for a torture conviction. *Id.* The statements made in closing argument emphasized the cruelty by reiterating that the "decedent spent 20 minutes enduring [Cockerham's] physical and sexual abuse under [Cockerham's] control, followed by several minutes of helpless isolation in a trash bin." *Id.* Accordingly, Cockerham failed "to demonstrate that the prosecutor improperly appealed to the jury's sympathy." *Id.*

Second, the Michigan Court of Appeals found that the facts at issue were dissimilar from the cases Cockerham cited where the prosecutor's statements were found to be unfairly prejudicial. *Id.* at *5 (citing *People v Dalessandro*, 165 Mich. App. 569 1988)). In *Dalessandro*, the defendant was convicted of assault with intent to do great bodily harm. 165 Mich. App. at 571. The conviction stemmed from the defendant's physical abuse of his girlfriend's then-10-month-old son. *Id*. at 571. There, the court found that the prosecutor improperly injected the "element of sympathy" for the victim in his closing argument by "constantly referring" to the victim as "'the poor innocent baby.'" *Id*. at 581. In this case, and unlike *Dalessandro*, the prosecutor did not ask the jury to sympathize with the decedent but

15

rather "recounted the evidence – in strong terms – that was required to prove defendant tortured the victim." *Cockerham*, 2023 WL 4141080, at *5.

Likewise, *People v. Swartz,* 171 Mich. App. 364 (1988) is distinguishable. In *Swartz*, the court found the prosecutor's remarks improper but rejected the request for a new trial because the statements' prejudicial effect "could have been cured with a timely requested cautionary instruction." *Id.* at 372–73. The Michigan Court of Appeals, in analyzing *Swartz*, stated even if the statements made by the prosecutor in Cockerham's case were improper, which they were not, Cockerham "failed to timely request a cautionary instruction" that would have "alleviated any prejudicial effect." 2023 WL 4141080, at *5.

Cockerham also claimed that the prosecutor "improperly denigrated him by referring to him as a predator waiting for prey." *Id.* But the evidence supported the prosecutor's description. *Id.* Cockerham "contrived an excuse to return to the building after he saw the decedent outside the building . . . employed a ruse by waiting in the lobby where he could watch for the decedent's return . . . [and] used the opportunity to get into the elevator with the decedent where he then abducted her." *Id.* According to the Michigan Court of Appeals, "[t]hese actions can be fairly described as predatory and were not denigrating." *Id.*

Overall, the Court here finds that Michigan Court of Appeals' decision on improper prosecutorial statements is neither contrary to Supreme Court precedent

16

nor an unreasonable application of federal law or the facts. Typically, prosecutors may not make remarks "calculated to incite the passions and prejudice of the jurors," *United States v. Solivan*, 937 F.2d 1146, 1151 (6th Cir. 1991). But the prosecutor's remarks about the crime here served a legitimate purpose. *See Millender v. Adams*, 187 F. Supp. 2d 852, 875 (E.D. Mich. 2002) (finding similar statements offered for reasons other than appealing to jury's sympathy did not warrant habeas relief), *aff'd*, 376 F.3d 520 (6th Cir. 2004). In particular, they were relevant to the torture charge (as discussed by the Michigan Court of Appeals) and were based on the testimony and medical evidence presented at trial. Given that a prosecutor has "leeway to argue reasonable inferences from the evidence" during closing arguments, *United States v. Crosgrove*, 637 F.3d 646, 664 (6th Cir. 2011) (citation omitted),the prosecutor's remarks were not improper.

Cockerham's claim that the prosecutor made personal attacks against him is also unavailing. Here, the prosecutor did not personally attack Cockerham but rather made arguments based on the video and testimony presented at trial. Thus, calling Cockerham a predator did not rise to the level of a constitutional violation given the evidence. *See Bedford v. Collins*, 567 F.3d 225, 234 (6th Cir. 2009) (affirming denial of habeas relief on prosecutorial misconduct claim where prosector called petitioner a "demon"); *Hutchison v. Bell*, 303 F.3d 720, 750–51 (6th Cir. 2002) (denying habeas relief on prosecutorial misconduct claim where prosecutor referred to petitioner as

having "evil ways" or "evil force"). As a result, Cockerham is not entitled to habeas relief on this basis.

Plus, even if the prosecutor made improper remarks, the trial court's jury instructions mitigated any prejudice to Cockerham. The trial court instructed the jurors that they should decide the facts of the case based upon the evidence, not sympathy or prejudice, and that the attorneys' statements and arguments are not evidence. (ECF No. 10-27, PageID.1590–92). The trial court also properly instructed the jurors on the presumption of innocence, reasonable doubt, and the elements of the charged offenses. (*Id.* at PageID.1590–92, 1603–12). Such instructions cured any potential prejudice to Cockerham. *See, e.g., Cockream v. Jones*, 382 Fed. App'x 479, 486 (6th Cir. 2010); *Hamblin v. Mitchell*, 354 F.3d 482, 495 (6th Cir. 2003); *Knapp v. White*, 296 F. Supp. 2d 766, 776 (E.D. Mich. 2003).

In sum, Cockerham did not show that the prosecutor's alleged misconduct rendered his trial fundamentally unfair. More importantly, for purposes of habeas review, the Court finds the Michigan Court of Appeals decision reasonable. Therefore, habeas relief is not warranted on these claims.

### 2. False Testimony/Evidence

Cockerham next asserted that the prosecutor committed misconduct by knowingly presenting false testimony/evidence at trial. (ECF No. 1, PageID.42–46). The Michigan Court of Appeals reviewed this claim for plain error on appeal and

denied relief. 2023 WL 4141080, at *6.   As the Michigan Court of Appeals explained, the record did not support Cockerham's factual allegations. *Id.* at *6.   For example, in his appeal, Cockerham accused "law enforcement officers of fabricating evidence by putting the victim's blood on his boots and by transferring sperm cells from his bed onto rape kit swabs." *Id.*   But Cockerham made no such assertions at trial, nor did he introduce witnesses to corroborate such arguments. *Id.*   Likewise, Cockerham did not call at trial the doctor at Speckin Forensics who "independently analyzed DNA evidence and made findings contradicting the prosecution experts' findings," nor did he submit this doctor's expert report into evidence. *Id.*   The Michigan Court of Appeals thus found no concrete basis to believe the prosecutor introduced fabricated evidence and deemed Cockerham's argument meritless. *Id.*

The Court finds the state court's decision neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.   Cockerham did not offer evidence at trial of supposed inconsistencies between the prosecutor's evidence and that of Speckin Forensics.   Accordingly, the jury had no opportunity to resolve the inconsistencies; at this point, the Court would have to make its own factual findings about the expert evidence.   Since Cockerham presented no clear and convincing evidence that the Court should afford the findings of his untested expert more merit than the prosecution's expert, the Court will not disturb the jury's and state court's factual findings.

In addition, Cockerham's argument that the police or the prosecution planted or tampered with evidence is entirely conclusory. (ECF No. 1, PageID.42–43).  And conclusory allegations, without evidentiary support, are insufficient to warrant habeas relief. *See Cross v. Stovall*, 238 Fed. App'x 32, 39–40 (6th Cir. 2007); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify habeas relief); *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 335–336 (6th Cir. 2012) (denying habeas relief on conclusory claims); *Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide sufficient basis for an evidentiary hearing on habeas review); *Range v. Berghuis*, No. 09-10945, 2015 WL 1967030, at *13 (E.D. Mich. Apr. 30, 2015) (denying habeas relief where petitioner presented only conclusory allegations that a *Brady* violation occurred).  For all of the reasons stated, then, this claim is denied.

### 3.    Falsified Transcripts

Cockerham also alleged that the prosecutor (in conjunction with the court stenographer) falsified the testimony of multiple witnesses in the trial transcripts. (ECF No. 1, PageID.47).  The Michigan Court of Appeals already denied Cockerham relief on this claim. *Cockerham*, 2023 WL 414108, at *6–7.  To reach its decision, the Michigan Court of Appeals relied on the factors outlined in *People v. Abdella*, 200 Mich. App. 473 (1993). *Id.*

20

Under *Abdella*, the defendant must satisfy the following four factors to overcome the presumption of accuracy in transcription and be entitled to relief: "(1) seasonably seek relief; (2) assert with specificity the alleged inaccuracy; (3) provide some independent corroboration of the asserted inaccuracy; [and] (4) describe how the claimed inaccuracy in transcription has adversely affected the ability to secure postconviction relief pursuant to subchapters 7.200 and 7.3000 of our court rules." 200 Mich. App. at 476. Although Cockerham's nine-month delay in raising issues with the transcripts was not unreasonable, he did not "assert with specificity the alleged inaccuracy." 2023 WL 4141080, at *6–7 (citation omitted). Instead, Cockerham made conclusory assertions that testimony was altered or fabricated without actual examples or independent corroboration. *Id.* And Cockerham "made only the general conclusory statement that the 'material inaccuracies in the transcription . . . have adversely affected his ability to secure state appellate relief or federal relief.'" *Id.* at *7.

As part of his appeal, Cockerham attempted to overcome some of the *Abdella* deficiencies by introducing an affidavit from his uncle and a more detailed statement of the alleged inaccuracies. *Id.* The Michigan Court of Appeals rejected his attempt. *Id.* Parties typically cannot expand the record on appeal, which includes the introduction of affidavits. *Id.*; *People v. Nix*, 301 Mich. App. 195, 203 (2013); *People v Williams*, 241 Mich. App. 519, 524 n.1 (2000). Also, unlike the party in *Abdella*,

21

Cockerham did not suggest that "any materially exculpatory testimony was altered" or omitted.  2023 WL 4141080, at *7.  That is, the alleged inaccuracies did not pertain to "the video evidence, DNA evidence, cell phone records, or GPS tether data." *Id.*  The Michigan Court of Appeals therefore declined Cockerham's request to review the court reporter's notes and audio recordings. *Id.*

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.  Transcripts are presumed to be correct. *See, e.g., Clay v. Schiebner*, No. 2:22-CV-13061, 2023 WL 2789596, *5 (E.D. Mich. Apr. 5, 2023); *LaPine v. Romanowski*, No. 15-11206, 2022 WL 247861, *15 (E.D. Mich. Jan. 25, 2022).  Speculation that a transcript is inaccurate is insufficient to challenge its accuracy on habeas review. *See Norris v. Schotten*, 146 F.3d 314, 333 (6th Cir. 1998).  And habeas relief based on inaccurate transcripts may only be granted when the petitioner shows prejudice. *See Scott v. Elo*, 302 F.3d 598, 604 (6th Cir. 2002) (citing *Bransford v. Brown*, 806 F.2d 83, 86 (6th Cir. 1986)).  Here, the court reporter certified the transcripts and Cockerham failed to establish that they were falsified or inaccurate by presenting specific and reliable evidence to that effect.  Cockerham's own assertions and vague statements from his uncle, provided nearly two years after the trial, are unpersuasive. *See, e.g., Range*, 2015 WL 1967030, at *14 (denying habeas relief on similar claim where transcripts were certified to be correct and petitioner failed to provide evidence of inaccuracies);

22

*White v. Klee*, No. 12-13996, 2014 WL 4658257, at \*7–8 (E.D. Mich. Sept. 17, 2014) (same).  Likewise, Cockerham failed to establish that he was prejudiced by any transcription errors.  Habeas relief is therefore not warranted on this claim.

### D.     Effectiveness of Trial Counsel

Cockerham also asserted that his trial counsel was ineffective for: (1) failing to object to the prosecutor's alleged improper remarks during closing argument; (2) failing to call an expert witness to rebut the expert testimony from Dr. Milad Webb estimating the victim's time of death; (3) failing to present an alibi defense by calling his parole agent as a witness; (4) failing to impeach the victim's boyfriend, Jermaine Jenkins, with evidence of their volatile relationship; and (5) conceding to the prosecution's introduction of false evidence. (ECF No. 1, PageID.38, 41, 50–58). Wilkins contended that these claims lack merit. (ECF No. 9, PageID.381–98).

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel.  In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the Supreme Court set forth a two-prong test that establishes whether a habeas petitioner received ineffective assistance of counsel.  First, a petitioner must prove that "counsel's performance was deficient." *Id.*  This requires a "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*     Second, the petitioner must show that counsel's deficient performance

23

prejudiced the defense. *Id.*  Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal.  *Id.*

To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance."  *Id*. at 690.  The reviewing court's scrutiny of counsel's performance is "highly deferential."  *Id*. at 689.  There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id*. at 690.  A habeas petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy. *Id.* at 689.

To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  A reasonable probability is one that is "sufficient to undermine confidence in the outcome" of the proceeding. *Id*. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id.* at 686.

Ultimately, a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their

performance.  "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citations omitted).  "When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*.

### 1.    Prosecutor's Closing Argument

Cockerham argued that trial counsel was ineffective for failing to object to the prosecutor's disputed remarks during closing argument. (ECF No. 1, PageID.41). The Michigan Court of Appeals considered this claim on direct appeal and denied relief. *Cockerham*, 2023 WL 4141080 at *5.  That is, because the prosecutor's remarks were not improper, Cockerham's trial counsel did not fall below prevailing professional norms by not objecting to the closing statement. *Id*.

The state court's decision does not contradict Supreme Court precedent or unreasonably apply federal law or the facts.  Given the Michigan Court of Appeals' ruling and this Court's ruling that the underlying prosecutorial misconduct claims lack merit, Cockerham cannot establish that trial counsel erred, or that he was prejudiced by counsel's failure to object to such matters at trial.

### 2.      Remaining Claims

Cockerham also took issue with trial counsel's failure to call an expert witness to refute Dr. Webb's testimony about the victim's time of death, failure to present an alibi defense by calling his parole agent as a witness, and failure to impeach the victim's boyfriend, Jermaine Jenkins, with evidence of their volatile relationship.  In addition, trial counsel acted ineffectively by conceding to the prosecution's introduction of allegedly false evidence. (ECF No. 1, PageID.50–58).

The Michigan Court of Appeals considered these claims on direct appeal and denied relief. *Cockerham*, 2023 WL 4141080, at *7–8.  The Michigan Court of Appeals found that there was "no record evidence that [Cockerham] would have found an expert witness who would have testified favorably on either DNA identification or the decedent's time of death." *Id.* at *8.  As a result, Cockerham could not establish ineffective assistance on such grounds. *People v Ackerman*, 257 Mich. App. 434, 455 (2003) (finding failure to offer proof "that an expert witness would have testified favorably if called by the defense" undermined ineffective assistance argument).   The same defects applied to Cockerham's allegations regarding an alibi witness; Cockerham presented no evidence that an alibi witness would have testified favorably on his behalf. *Cockerham*, 2023 WL 414080, at *8; *People v. Pickens*, 446 Mich. 298, 327 (1994) (failing to establish that "alibi witness'

26

testimony would have altered the result" or that alibi witness would testify favorably undermined ineffective assistance argument).

Cockerham's argument that his counsel should have cross-examined Dr. Webb more intensely, especially with respect to the estimated time of death, also does not support habeas relief. (ECF No. 1, PageID.52–54).  Cross-examination is a matter of strategy entitled to deference. *Petri*, 279 Mich. App. 407, 411, 413 (2008).  Here, Cockerham's trial counsel "vigorously cross-examined Dr. Webb about discrepancies between his trial testimony and preliminary examination testimony." *Cockerham*, 2023 WL 414080, at *8.  There is no evidence that the cross-examination was ineffective. *Id.*  Likewise, the argument that trial counsel should have shifted blame to the decedent's boyfriend by calling a witness that would support this theory was unsupported by the record evidence. *Id.*  That is, there is no information about "what knowledge this witness had or how he would have testified." *Id.*

Ultimately, the Court will not disturb the Michigan Court of Appeals' findings. It is well-settled that defense counsel must conduct a reasonable investigation into the facts of a defendant's case, or make a reasonable determination that such investigation is unnecessary. *Wiggins*, 539 U.S. at 522–223; *Strickland*, 466 U.S. at 691; *Stewart v Wolfenbarger*, 468 F.3d 338, 356 (6th Cir. 2007).  The duty to investigate "includes the obligation to investigate all witnesses who may have

information concerning . . . guilt or innocence," including impeachment evidence. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). That being said, decisions as to what evidence to present and whether to call or cross-examine certain witnesses are presumed to be matters of trial strategy. *See Dell v. Straub*, 194 F. Supp. 2d 629, 650–51 (E.D. Mich. 2002). When making strategic decisions, counsel's conduct must be reasonable. *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); *see also Wiggins*, 539 U.S. at 522–23.

The record reveals that trial counsel extensively cross-examined Dr. Webb about the victim's time of death and other issues related to the autopsy. (ECF No. 10-24, PageID.1101–13). Counsel's decision to challenge the witness through cross-examination, and the extent of that cross-examination, was a matter of trial strategy that Cockerham failed to demonstrate was unreasonable. Furthermore, Cockerham did not show that he was prejudiced by counsel's conduct given that he does not offer an affidavit or other evidence from an expert to support this claim. As discussed, conclusory allegations are insufficient to justify habeas relief. *See Cross*, 238 Fed. App'x at 39–40; *Workman*, 178 F.3d at 771; *see also Wogenstahl*, 668 F.3d at 335–36; *Washington*, 455 F.3d at 733.

What is more, trial counsel's decision not to present an alibi defense was reasonable given Cockerham's presence in the building on the night of the incident. Namely, the fact that Cockerham's tether data indicated that he was near or at the

28

apartment building from about 10:00 p.m. to 10:54 p.m. on the night of the crime, and the video footage from the building, would make such an argument difficult. (ECF No. 10-25, PageID.1287–90, 1301–03; ECF No. 11-2, PageID.3279). Given the circumstances, trial counsel's decision was a matter of sound trial strategy.

And trial counsel attempted to impeach the victim's boyfriend, Jermaine Jenkins, albeit unsuccessfully. (ECF No. 11-3, PageID.3412–20). Although Cockerham believed that counsel should have done more to implicate Jenkins for the victim's murder, Cockerham did not establish that counsel's conduct prejudiced him. That is, Cockerham did not show that further investigation or questioning of Jenkins would have elicited favorable defense testimony, particularly in light of the significant evidence of Cockerham's guilt presented at trial. Cockerham claimed that a man named Bernard Tyler Jr. could have provided impeachment testimony, yet offered no affidavit from Tyler or other evidence in support of this claim. (ECF No. 1, PageID.56–57). Overall, Cockerham's conclusory allegations are insufficient to demonstrate that counsel erred or that he was prejudiced by counsel's conduct. *See Cross*, 238 Fed. App'x at 39-40; *Workman*, 178 F.3d at 771; *see also Wogenstahl*, 668 F.3d at 335-336; *Washington*, 455 F.3d at 733.

Lastly, as to allegedly false evidence, given the Michigan Court of Appeals' ruling and this Court's ruling that those underlying claims lack merit, Cockerham cannot establish that trial counsel erred or that he was prejudiced by counsel's

29

conduct in not objecting to such evidence at trial.  In sum, Cockerham did not establish that trial counsel was ineffective under the *Strickland* standard.  Habeas relief is not warranted on these claims.

### E.    Double Jeopardy

Cockerham next asserted that he is entitled to habeas relief because the trial court violated the Double Jeopardy Clause. (ECF No. 1, PageID.59–60).  That is, the trial court did not indicate at sentencing that Cockerham was to receive only one first-degree murder conviction, nor did the court clarify that it would not vacate the predicate felonies (the kidnapping, the CSC convictions) for the felony murder conviction. (*Id.*).  Wilkins contended that the first claim is moot, that Cockerham waived or procedurally defaulted on the second claim, and that the second claim ultimately lacks merit. (ECF No. 9, PageID.399–05).

The Fifth Amendment's Double Jeopardy Clause commands that no "person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V.  The Double Jeopardy Clause provides three basic protections: "[It] protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction.  And it protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969).  Federal courts determine whether two crimes constitute the same offense for double jeopardy purposes by applying the same-element test

30

originally set forth in *Blockburger v. United States*, 284 U.S. 299, 304 (1932). *United States v. Dixon*, 509 U.S. 688, 696 (1993); *Murr v. United States*, 200 F.3d 895, 900 (6th Cir. 2000).  The test "inquires whether each offense contains an element not contained in the other; if not, they are the 'same offence' and double jeopardy bars additional punishment and successive prosecution." *Dixon*, 509 U.S. at 696.

In the context of multiple punishments, however, the Double Jeopardy Clause does not prohibit a state from defining one act of conduct to constitute two separate criminal offenses.  As the Supreme Court has explained, "[b]ecause the substantive power to prescribe crimes and determine punishments is vested with the legislature . . . the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent." *Ohio v. Johnson*, 467 U.S. 493, 499 (1984).  When "a legislature specifically authorizes cumulative punishment under two statutes . . . a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial." *Missouri v. Hunter*, 459 U.S. 359, 368–69 (1983).

Cockerham raised the same claims he does now in his state appeal.  The Michigan Court of Appeals denied both.  To start, the Michigan Court of Appeals denied relief on Cockerham's claim that the Double Jeopardy clause precludes his conviction of both first-degree premeditated murder and first-degree felony murder

31

for a single homicide because it was moot. *Cockerham*, 2023 WL 4141080, at \*7. That is, "the trial court amended the judgments of sentence to reflect one conviction of first-degree murder, on two theories." *Id.* For purposes of habeas review, the Court finds the decision neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The trial court's amendment to the judgments of sentence addressed Cockerham's double jeopardy concerns. Since "there is no effective relief available in federal court that [Cockerham] has not already received in state court," his claim is moot. *Friedman's Inc. v. Dunlap*, 290 F.3d 191, 197 (4th Cir. 2002); *see also Nieman v. Carl*, No. 21-10299, 2024 WL 348494, \*10 (E.D. Mich. Jan. 30, 2024) (finding similar claim to be moot and denying habeas relief), *aff'd sub nom. Nieman v. Douglas*, No. 24-1191, 2025 WL 2531351 (6th Cir. May 16, 2025); *Prince v. Jackson*, No. 13-11594, 2017 WL 3727227, \*5 (E.D. Mich. Aug. 30, 2017) (same). Habeas relief is not warranted on this claim.

The Michigan Court of Appeals denied relief on the second claim because Cockerham withdrew the argument "regarding the predicate felonies in the trial court, and therefore waived it for appeal." *Cockerham*, 2023 WL 4141080 at \*7. And even if Cockerham did not waive the argument, "conviction of felony murder and the predicate felonies does not violate the Double Jeopardy Clause because kidnapping and [criminal sexual conduct] include elements that are not elements of

32

murder." *Id.* Again, the state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The offenses of first-degree felony murder, kidnapping, and criminal sexual conduct (CSC) have different elements. "*Blockburger* . . . requires that the statutory provisions' required elements be viewed in the abstract." *United States v. Ehle*, 640 F.3d 689, 696 (6th Cir. 2011); *Gonzales v. Wolfe*, 290 Fed. App'x 799, 808 (6th Cir. 2008) ("the United States Supreme Court itself has applied the *Blockburger* test in the abstract to the elements as described in a statute instead of to the facts of a particular case"). In the abstract, it is possible to commit first-degree felony murder by committing some other predicate felony without also committing kidnapping or CSC, and it is possible to commit kidnapping and CSC without committing first-degree felony murder. Consequently, the Michigan Court of Appeals reasonably determined that Cockerham's convictions for first-degree felony murder and the predicate felonies of kidnapping and/or CSC did not violate double jeopardy.

And the Michigan Supreme Court ruled that the Michigan legislature intended to authorize multiple punishments upon convictions for first-degree felony murder and the underlying felony of criminal sexual conduct. *See People v. Ream*, 481 Mich. 223, 238–41 (2008). As a result, the Court's inquiry "is at an end" under *Missouri v. Hunter, supra,* and there is no double jeopardy violation. *See, e.g., Conklin v. Warren*, No. 2:12-CV-10385, 2014 WL 584901, *23–24 (E.D. Mich. Feb. 14, 2014)

33

(denying habeas relief on double jeopardy claim involving felony murder and first-degree child abuse); *Berry v. Capello*, No. 2:10-CV-11398, 2012 WL 4450049, *8 (E.D. Mich. Sept. 26, 2012) (denying habeas relief on double jeopardy claim involving felony murder and assault with intent to commit armed robbery); *see also Slaughterbutler v. Horton*, No. 2:18-CV-24, 2022 WL 2448178, *27 (W.D. Mich. July 6, 2022) (denying habeas relief on double jeopardy claim involving felony murder and armed robbery).  Habeas relief is therefore not warranted on this claim.

## F.      Effectiveness of Appellate Counsel

Lastly, Cockerham argued that he is entitled to habeas relief because appellate counsel did not properly raise the foregoing double jeopardy issues on direct appeal. (ECF No. 1, PageID.59). Wilkins disputed the validity of this argument. (ECF No. 9, PageID.410–13).

The right to the effective assistance of counsel includes the right to the effective assistance of appellate counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  To prevail on a claim of ineffective assistance of appellate counsel, the petitioner must show "that his appellate counsel was (1) objectively unreasonable in failing to pursue nonfrivolous issues on appeal, and (2) that the failure was prejudicial (i.e., that but for his attorney's mistake, he would have prevailed on appeal)." *Keys v. Booker*, 798 F.3d 442, 456 (6th Cir. 2015).  Still, "[i]t is not necessary for appellate counsel to raise every nonfrivolous claim on direct appeal."

34

*Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002).  Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel."  *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).  In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751–52).  "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo*, 281 F.3d at 579 (citation omitted).

Since the Michigan Court of Appeals did not directly address this claim in its decision, the Court will review the ineffective assistance of appellate counsel claim de novo.  Given the Michigan Court of Appeals' ruling and this Court's ruling that the underlying double jeopardy claims lack merit, Cockerham cannot establish that appellate counsel erred or that he was prejudiced by counsel's conduct.  As is the case with trial counsel, appellate counsel cannot be deemed ineffective for failing to raise issues that lack merit. *See Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (citing *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).  Accordingly, the Court will not award habeas relief on this claim.

35

## IV.    Certificate of Appealability

Because Cockerham is not entitled to federal habeas relief on any of his claims, the Court will deny and dismiss with prejudice the habeas petition. (ECF No. 1).

Before Cockerham can appeal the Court's decision, a certificate of appealability must be issued. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability is warranted only if a habeas petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  And when a district court denies relief on procedural grounds, a certificate of appealability is warranted "if jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitution right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*.

Having considered the matter, the Court concludes that Cockerham fails to make a substantial showing of the denial of a constitutional right as to his habeas claims and that reasonable jurists could not debate the correctness of the Court's procedural ruling(s).  Accordingly, the Court will deny a certificate of appealability.

Lastly, the Court concludes that an appeal cannot be taken in good faith. *See* Fed. R. App. P. 24(a)(3)(A).  Accordingly, the Court will deny leave to proceed in forma pauperis on appeal.  This case is closed.

* * *

For the reasons given, the Court **ORDERS** that the habeas petition (ECF No. 1) is **DENIED AND DISMISSED WITH PREJUDICE**.

The Court **FURTHER ORDERS** that a certificate of appealability and permission to appeal in forma pauperis are **DENIED**.

Dated: July 17, 2026

s/Robert J. White
Robert J. White
United States District Judge